UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION
Civil Action No. ___-cv-___

LYDIA GAIL HEMINGWAY,

    Plaintiff,

v.

THE KROGER COMPANY,

    Defendant.

**COMPLAINT**

## NATURE OF THE ACTION

1. Plaintiff brings this action against Defendant The Kroger Company ("Kroger" or "Defendant") for discrimination and retaliation based on race in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, et seq. ("Title VII").

2. Plaintiff further brings this action against Defendant for violations of Section 1981 of the Civil Rights ACt of 1866, 42 U.S.C. § 1981 ("Section 1981") for discrimination based on race.

3. Plaintiff further brings this action against Defendant for discrimination and retaliation based on disability and/or perceived disability in violation of the Americans with Disabilities Act, 42 U.S.C. § 12101, et seq., as amended by the Americans with Disabilities Act Amendments Act of 2008 ("ADA").

## PARTIES, JURISDICTION, AND VENUE

4. Plaintiff Lydia Gail Hemingway ("Plaintiff' or "Ms. Hemingway") is an African American female and at all relevant times resided in Longs, South Carolina.

5. Defendant is an Ohio corporation with its principal place of business in Cincinnati, Ohio. Defendant maintains a registered agent mailing address at 508 Meeting Street, West Columbia, South Carolina 29169.

6. Defendant is an employer within the meaning of the relevant laws and statutes.

7. Plaintiff was an employee of Defendant within the meaning of the relevant laws and statutes.

8. Plaintiff was an employee of Defendant at Defendant's location at 2939 US-17 BUS, Murrells Inlet, South Carolina in Georgetown County.

9. This action arises under federal statutes including Title VII, Section 1981, and the ADA. This Court has jurisdiction over this matter pursuant to 28 U.S.C.§ 1331 because the claims brought herein constitute a federal question under the laws of the United States..

10. Venue is proper in this judicial district pursuant to 28 U.S.C. §1391 because Plaintiff was hired to work in this District and Defendant conducts business in this District.

11. Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") on June 22, 2021 on the basis of her race, disability, and retaliation (Charge No. 415-2021-00800). The Charge was then transferred to the South Carolina Human Affairs Commission ("SHAC").

12. The EEOC issued a Notice of Right to Sue on May 4, 2022 and this Complaint is timely filed within 90 days thereof.

13. Plaintiff has satisfied all private, administrative, and judicial prerequisites to the institution of this action.

**GENERAL ALLEGATIONS**

14. Ms. Hemingway was hired by the Defendant on or around June 1, 1989.

15.     During her employment. Ms. Hemingway received raises and promotions and eventually rose to the level of Unit Manager.

16.     Ms. Hemingway was a good employee and performed her job well.

17.     During her employment with Defendant, she worked at various locations. Most recently, she worked at store number 025.

18.     As Unit Manager, Ms. Hemingway's direct supervisor was District Manager Laurie King. King is a Caucasian female.

19.     Ms. Hemingway's human resources contact at Defendant was Human Resources Manager Doug Busch. Busch is a Caucasian male.

20.     During late-2020 and early-2021, Ms. Hemingway made multiple complaints on a weekly basis to Store Manager Tim Edwards about how Busch was treating her differently than he treated non-African American employees.

21.     In or around January 2021, Ms. Hemingway submitted eight vacation requests on behalf of her management staff and herself.

22.     On March 2, 2021, Busch emailed Ms. Hemingway and informed her that three of the vacation requests had been denied.

23.     Busch also informed Ms. Hemingway that the decision was King's and he was "just following directions."

24.     Ms. Hemingway attempted to speak with King about the denied vacation dates on March 7, 2021 and attempted to explain why Ms. Hemingway chose certain dates. Ms. Hemingway attempted to explain that she was taking her mother, father, and grandchildren to Disney.

25. However, King was not willing to discuss it at that time and instead insisted that Ms. Hemingway show King proof of her hotel reservations if she still wanted those dates.

26. It appeared as if King did not believe that Ms. Hemingway had the financial or other means to take a vacation to Disney with her family.

27. This requirement to prove vacation reservations was not a standard policy at Defendant.

28. Ms. Hemingway's Caucasian co-workers did not have to show proof of vacation reservations prior to having their vacation requests approved.

29. For example, Manager Jimmy Collins, a Caucasian male, was able to negotiate vacation time for a date that she had been denied by offering to work on a Sunday (which she would have done anyway). She was not required to show proof of her vacation reservations.

30. Ms. Hemingway provided the information about Collins to King to illustrate how non-African American employees were treated differently.

31. It was clear, based on Ms. Hemingway's interactions with King and Busch that they did not believe that her vacation was legitimate.

32. It was humiliating for Ms. Hemingway to be asked to show her vacation reservations for a personal trip.

33. Then on March 15, 2021, Ms. Hemingway became ill and tested positive for Covid-19 on March 16, 2021.

34. Ms. Hemingway informed King and Busch that she had contracted Covid-19 and would be out of work.

35. Due to her illness, Ms. Hemingway remained out of work until March 29, 2021.

4

36. When she returned to work on March 29, 2021, Ms. Hemingway was asked to speak with Busch in his office.

37. When she arrived at Busch's office, she realized that Loss Prevention Manager Todd Sheehan, a Caucasian male, was also present at the meeting.

38. Busch and Sheehan confronted Ms. Hemingway about a series of transactions where she asked the cashier to ring up her food and allow her to retrieve her wallet later to finalize the payment.

39. Busch and Sheehan alleged that this conduct by Ms. Hemingway violated Defendant's Associate Purchase Policy.

40. However, despite the Associate Purchase Policy, it was a common occurrence for employees to ring up food with the cashier and then pay later.

41. During the meeting, Ms. Hemingway provided examples of other employees who violated the Associate Purchase policy, which included: David Rosati (Caucasian male), Rueann Tracy (Caucasian); Jackie White (Caucasian); Peyton Drive (Caucasian); and Todd Sheehan (Caucasian).

42. Busch and Sheehan accused Ms. Hemingway of lying, and informed her that another investigation would need to be conducted to substantiate her claims.

43. Ms. Hemingway was then placed on an unpaid suspension while Defendant conducted its investigation.

44. Two days later, Busch called Ms. Hemingway and informed her that her claims had been investigated, that they were unsubstantiated, and that Ms. Hemingway was being terminated for a violation of company policy.

45. Upon information and belief, other non-African American employees were not terminated for their violation of the Associate Purchase Policy.

46. Upon information and belief, other non-African American employees engaged in policy violations of a more severe nature than Ms. Hemingway, and were not terminated.

47. Thus, other non-African American employees were treated more favorably than Ms. Hemingway.

48. Defendant terminated Ms. Hemingway because of her race and in retaliation for opposing unlawful race dicrimination by Defendant.

49. Defendant terminated Ms. Hemingway because of her real or perceived disability (Covid-19) and in retaliation for her requesting a leave of absence as a reasonable accommodation.

50. As a result of her termination, Ms. Hemingway experienced severe emotional distress, including but not limited to stress, anxiety, difficulty sleeping, difficulty eating, and nervousness.

**FIRST CLAIM FOR RELIEF**
**Discrimination and Retaliation on the Basis of Race**
**Violations of Title VII of the Civil Rights Act of 1964, as amended**

51. The foregoing paragraphs are incorporated herein by reference.

52. At all times relevant to this action, Plaintiff was an "employee" covered by the protections of Title VII of the Civil Rights Act of 1964 within the meaning of 42 U.S.C. § 2000e(f).

53. At all relevant times herein, Defendant employed at least 15 employees at all relevant times and is an "employer" within the meaning of 42 U.S.C. § 2000e(b).

54. In doing the acts alleged above and herein, Defendant discriminated against Plaintiff on the basis of race in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000, et seq.

55. Defendant's discriminatory actions included, but were not limited to (1) limiting, segregating, or classifying Plaintiff in a way that adversely affected her opportunities or status as an employee because of her race; (2) utilizing standards, criteria, or methods of administration that have the effect of discrimination on the basis of her race; (3) singling Plaintiff out for disparate and harsher treatment because of her race; and (4) discharging Plaintiff based on her race.

56. Defendant retaliated against Plaintiff because she made complaints of unlawful race discrimination. Defendant's retaliatory actions included but were not limited to (1) refusing to provide Plaintiff with her requested vacation time; (2) subjecting Plaintiff to disparate and harsher standards for requesting vacation time; (3) subjecting Plaintiff to an investigation for alleged company policy violations; (4) suspending Plaintiff without pay; and (5) terminating Plaintiff's employment.

57. As a direct and proximate result of said conduct, Plaintiff has suffered lost past and future wages and job benefits and has suffered and will continue to suffer emotional pain, suffering, inconvenience, embarrassment, mental anguish, and other non-pecuniary losses in an amount to be determined at trial.

58. Defendant's actions were done maliciously, willfully, wantonly, and in a manner that demonstrates a reckless disregard for Plaintiff's rights. Defendant's officers, directors, and managers participated in and condoned this malicious, willful, wanton, and reckless conduct

alleged above. As a result of the Defendant's conduct, Plaintiff is entitled to recover punitive damages.

## SECOND CLAIM FOR RELIEF
### Race Discrimination in Violation of Section 1981
### Violations of 42 U.S.C. § 1981

59. The foregoing paragraphs are incorporated herein by reference.

60. By the actions described herein above, Defendant denied Plaintiff, an African American, the same right to make and enforce contracts as is enjoyed by white citizens of the United States, in violation of 42 U.S.C. § 1981.

61. Defendant's violation of Section 1981 was willful.

62. Defendant is liable to Plaintiff for all damages arising from Defendant's violation of Section 1981, in an amount to be determined at trial.

## THIRD CLAIM FOR RELIEF
### Disability Discrimination and Retaliation
### Violations of Americans with Disabilities Act of 1990, as amended

63. The foregoing paragraphs are incorporated herein by reference.

64. At all relevant times, Defendant was an "employer" as defined by the ADA, 42 U.S.C. §§ 12101.

65. At all relevant times, Plaintiff was an "employee" as defined by the ADA, 42 U.S.C. §§ 12101.

66. Prior to and at the time that Defendant terminated Plaintiff's employment, Plaintiff was qualified for the positions she held and/or sought.

67. Plaintiff's infection with Covid-19 severely limited one or more major life activities, and as such is considered a "disability" under the ADA.

68. Plaintiff's infection with Covid-19 limited her ability to breathe and she had prolonged symptoms of cough, congestion, extreme fatigue, and other neurological symptoms (arm tingling).

69. Defendant was aware of her disability.

70. Defendant perceived Plaintiff as having a disability.

71. Plaintiff requested a medical leave of absence for her real or perceived disability, which would have allowed her to manage her health conditions and continue working.

72. This request qualified as a request for reasonable accommodation under the ADA.

73. With the requested accommodation(s), Plaintiff would have been able to perform all of the essential functions of her job.

74. Plaintiff suffered an adverse employment action when the Defendant suspended her without pay on the day she returned from medical leave and terminated her employment two days later.

75. Defendant violated the ADA by treating Plaintiff differently from her peers in the terms and conditions of her employment and ultimately terminating her employment.

76. Defendant further violated the ADA by terminating Plaintiff's employment in retaliation for Plaintiff exercising her statutory right to request a reasonable accommodation.

77. In doing the acts alleged herein, Defendant violated the ADA. Due to Plaintiff's actual or perceived disability, Defendant took adverse employment actions against Plaintiff and eventually terminated her employment. 42 U.S.C. § 12112(a).

78. As an actual, proximate, and foreseeable result of Defendant's actions, Plaintiff has suffered lost back and front pay, lost benefits, severe emotional distress, severe physical

distress, anxiety, depression, embarrassment, humiliation, physical pain and suffering, and her peace of mind has been disturbed.

79. Defendant's actions were done maliciously, willfully, wantonly, and in a manner that demonstrates a reckless disregard for Plaintiff's rights. Defendant's officers, directors, and managers participated in and condoned this malicious, willful, wanton, and reckless conduct alleged above. As a result of the Defendant's conduct, Plaintiff is entitled to recover punitive damages.

## **PRAYER FOR RELIEF**

Wherefore, Plaintiff respectfully requests that this Court enter judgment in her favor and grant her the following relief:

1. An Order awarding Plaintiff damages for Defendant's violation of Title VII of the Civil Rights Act of 1964, including backpay, lost wages, employment benefits, and any other compensation denied or lost because of Defendant's violation of Title VII of the Civil Rights Act of 1964;

3. An Order awarding Plaintiff compensatory damages for emotional distress, pain and suffering, inconvenience, and/or mental anguish in an amount to be proven at trial;

4. An Order awarding Plaintiff punitive damages under Title VII, Section 1981, and the ADA in an amount to be proved at trial;

5. An Order awarding Plaintiff the costs of this action;

6. An Order awarding Plaintiff reasonable attorneys' fees;

7. An Order awarding Plaintiff pre-judgment and post-judgment interest at the highest rates allowed by law; and

8.      An Order granting any other necessary or appropriate relief to which Plaintiffs are entitled under the law.

## JURY TRIAL DEMAND

Plaintiff demands a trial by jury.

>  */s/ Jacob J. Modla*
>  Jacob J. Modla, Fed. Bar # 12639
>  THE LAW OFFICES OF JASON E. TAYLOR
>  115 Elk Avenue
>  Rock Hill, South Carolina 29730
>  Telephone: 803-792-4774
>  E-Mail: jmodla@jasonetaylor.com
>
>  */s/ L. Michelle Gessner  (Pro Hac Vice forthcoming)*
>  L. Michelle Gessner, NC State Bar No. 26590
>  GESSNERLAW, PLLC
>  602 E. Morehead Street
>  Charlotte, NC 28202
>  Telephone: (844) 437-7637
>  Fax: (980) 206-0286
>  Email: michelle@mgessnerlaw.com
>
>  *Attorneys for Plaintiff*