## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF SOUTH CAROLINA
## CHARLESTON DIVISION

| | | |
|---|---|---|
| LYDIA GAIL HEMINGWAY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 2:22-cv-2457-DCN-KFM |
| vs. | ) | |
| | ) | **ORDER** |
| THE KROGER COMPANY, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

This matter is before the court on Magistrate Judge Kevin F. McDonald's Report and Recommendation ("R&R"), ECF No. 57, on defendant The Kroger Company's ("Kroger") motion for summary judgment, ECF No. 45. For the reasons set forth below, the court adopts the R&R and grants Kroger's motion for summary judgment.

### I.  BACKGROUND

The plaintiff, Lydia Gail Hemingway ("Hemingway"), an African American female, filed a complaint against Kroger, her former employer, in this court on July 29, 2022. ECF No. 1, Compl. In her complaint, Hemingway alleges three causes of action for (1) race discrimination and retaliation in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e et seq.; (2) race discrimination in violation of 42 U.S.C. § 1981 ("Section 1981"); and (3) disability discrimination and retaliation in violation of the Americans with Disabilities Act of 1990 (the "ADA"), 42 U.S.C. § 12101 et seq. Id. at ¶¶ 1–3.

The R&R ably recites the facts of the case, and the parties do not object to the R&R's recitation thereof. Therefore, the court will only briefly summarize the material

1

facts as they appear in the R&R for the purpose of aiding an understanding of the court's legal analysis.

This case concerns Kroger's termination of Hemingway's employment, following Hemingway's alleged violation of Kroger's employee policies. ECF No. 45. Hemingway began working for Kroger in 1989 as a bread bagger. ECF No. 45-1 at 6. She was promoted to an assistant manager in 2007 and became a store manager in 2016. Id. Most recently, she was the store manager for Store 025 in Myrtle Beach, South Carolina. Id. Hemingway oversaw nearly 200 store employees and was responsible for training, coaching, and developing employees. ECF No. 45-6 at 2. Kroger's store managers were expected to "maximize sales and profits, reduce shrink and improve each store department's contribution." Id.

### A. Kroger's Associate Purchase Policy

Kroger's Associate Purchase Policy states:

Noncompliance with the Associate Purchase Policy listed below will result in immediate termination.

All merchandise or products purchased by associates must be rung on the cash register and recorded item-by-item. Checkout transactions are to be the same for associates as for customers.

• • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • •

 i. Associates may order, select and make purchases only on their own time, off the clock (meal period, break, or at the end of working hours). Payment must be made at the time the merchandise leaves the store, prior to consumption or usage. The associate is to retain the register receipt and attach it to the product.

ECF No. 45-3 at 6, Kroger Handbook.

Two Kroger employees, Human Resources Manager Doug Busch and District Manager Laurie King, testified that the Associate Purchase Policy applies to all Kroger employees, and it holds all employees to the same standard. ECF Nos. 45-7, King Dep. at 89:5; 45–4, Busch Dep. at 129:18–25. Busch testified that he expects managers to follow the Associate Purchase Policy "to the letter and to actually go above and beyond." Busch Dep. at 130:11.

**B. Hemingway's Vacation Request**

In early 2021, Hemingway submitted her vacation requests for the year. Hemingway Dep. at 54:6–24. One of her vacation requests was denied due to being during a "blackout week," meaning it conflicted with a holiday and a busy shopping season. King Dep. at 117:21–25. Hemingway testified that she believed King denied her vacation request based on her race, alleging her white counterparts were not denied vacation requests. Hemingway Dep. at 60:15–22. Hemingway further testified that King used a "threatening and bullying tone" when she talked to her, but she "didn't do that to [Hemingway's] white counterpart." Id. at 46:21–22; 47:19–22.

**C. Kroger's Ethics Point Complaint and Investigation**

While working, Hemingway told the Starbucks employee within her Kroger store to ring up items for her without her paying for them at the register. ECF No. 45-1 at 8. Hemingway argues she paid for the items, just at a later time. ECF No. 45-11 at 20–21. She typically paid for the items at the end of her shift, but on one occasion paid for the items the next day. ECF No. 45-1 at 9.

An anonymous employee contacted the Kroger's ethics and compliance reporting hotline to report a violation of the Associate Purchase Policy by Hemingway. ECF No.

45-8, Kunselman Decl. ¶ 5.  The report was investigated by Asset Protection Manager Todd Sheehan.  Id.  He reviewed videos and photos of certain transactions and interviewed two associates who worked at the Starbucks counter where Hemingway initiated the transactions at issue.  ECF No. 45-9 at 2–9.  From the video on February 19, 2021, Sheehan saw Hemingway approach the Starbucks counter and the associate ring up four food items.  Id. at 6–8.  The associate then suspended the transaction, and Hemingway walked away with the food items without paying for them.  Id.  Sheehan also reviewed photos of Hemingway making transactions at the Starbucks counter on February 16, February 19, and March 14, 2021.  ECF No. 45-10 at 3–13.

On March 17, 2021, Sheehan interviewed the Starbucks associates who provided written statements and confirmed that Hemingway purchased lunch items and asked them to suspend the transactions.  ECF No. 45-11 at 7–8.  On March 29, 2021, Sheehan and Busch met with Hemingway to issue a Performance Notification detailing the alleged violations of the Associate Purchase Policy and notifying her that she was under investigation.  ECF No. 45-14, 3/29/21 Performance Notification.  The Performance Notification listed the three suspended transactions and noted that Hemingway never paid for the suspended transaction from February 19, 2021.  Id.  During this meeting, Sheehan asked Hemingway how she typically purchased lunch items, and Hemingway admitted that she frequently had the Starbucks associates ring up her items, suspend the orders, and she would go upstairs to consume the items.  ECF No. 45-11 at 20.  However, Hemingway stated that she would always pay for the items later in the day, but she forgot on one occasion and paid for the food the following day.  Id.  Hemingway stated that she did not carry money or her phone while at work since she did not have pockets.  Id.  She

further stated that she understood "she was supposed to pay for the product before it was consumed." Id. Hemingway noted that "other people did it, but [she] did not want to do name calling." Id.

Hemingway was placed on unpaid administrative leave immediately and officially terminated on March 31, 2021. ECF No. 45-14 at 2. Lee Kunselman, the division HR leader for Kroger's Atlanta division, who recommended the termination of Hemingway's employment, testified that he had had never met or interacted with Hemingway and had no knowledge of her race, health conditions, or any complaints she had made against her supervisors. Kunselman Decl. ¶ 9.

Other Kroger employees who have been terminated for violating the Associate Purchase Policy include:

- a Caucasian male store manager who took reading glasses off the shelf and used the glasses without paying for them. ECF No. 45-4, Busch Dep. at 28:4–6.

- a Caucasian male clerk who ate shrimp out of a meat cooler without paying for the shrimp before eating it. Id. at 64:7.

- a Caucasian female who marked down products before purchasing them. ECF No. 45-12 at 4.

**D. Hemingway's Covid Leave**

On March 15, 2021, Hemingway tested positive for COVID-19. Hemingway Dep. at 12:21. She took leave to recover and also took a scheduled vacation before returning to work on March 29, 2021. Id. at 13:1–4; ECF No. 45-13 at 2.

When Hemingway was asked in her deposition if she believed she was disabled when she returned to work, Hemingway replied that she was "still sick." Hemingway

Dep. at 73:10. As noted, Kunselman testified that he did not know about Hemingway's COVID-19 leave at the time of his recommendation to terminate her employment, and he did not learn of it until this case was filed. Kunselman Decl. ¶ 9.

### E. Procedural History

On November 27, 2023, Kroger filed a motion for summary judgment. ECF No. 45. On December 27, 2023, Hemingway filed a response in opposition. ECF No. 48. On January 5, 2024, Kroger filed a reply. ECF No. 49. On July 3, 2024, Magistrate Judge Kevin F. McDonald issued his R&R, in which he recommended that Kroger's motion for summary judgment be granted. ECF No. 57, R&R. Hemingway objected to the R&R on August 13, 2024. ECF No. 60. Thereafter, Kroger replied to Hemingway's objection on September 6, 2024. ECF No. 68. As such, this matter is fully briefed and ripe for the court's review.

## II.  STANDARD

### A. Order on R&R

This court is charged with conducting a de novo review of any portion of the magistrate judge's R&R to which specific, written objections are made. 28 U.S.C. § 636(b)(1). A party's failure to object is accepted as agreement with the conclusions of the magistrate judge. See Thomas v. Arn, 474 U.S. 140, 149–50 (1985). The recommendation of the magistrate judge carries no presumptive weight, and the responsibility to make a final determination rests with this court. Mathews v. Weber, 423 U.S. 261, 270–71 (1976). The court may "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge . . . or recommit the matter to the magistrate judge with instructions." 28 U.S.C. § 636(b)(1). The court is

charged with making a de novo determination of any portion of the R&R to which a specific objection is made.  Id.

However, in the absence of a timely filed, specific objection, the court reviews the R&R only for clear error.  Diamond v. Colonial Life & Accident Ins. Co., 416 F.3d 310, 315 (4th Cir. 2005) (citation omitted).  Furthermore, "[a] party's general objections are not sufficient to challenge a magistrate judge's findings."  Greene v. Quest Diagnostics Clinical Lab'ys, Inc., 455 F. Supp. 2d 483, 488 (D.S.C. 2006) (citation omitted).  When a party's objections are directed to strictly legal issues "and no factual issues are challenged, de novo review of the record may be dispensed with."  Orpiano v. Johnson, 687 F.2d 44, 47 (4th Cir. 1982) (citation omitted).  Analogously, de novo review is unnecessary when a party makes general and conclusory objections without directing the court's attention to a specific error in a magistrate judge's proposed findings.  Id.

### B.  Motion for Summary Judgment

Summary judgment shall be granted if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  "By its very terms, this standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247–48 (1986).  "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."  Id. at 248.  "[S]ummary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the

evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id. "[A]t the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Id. at 249. In so doing, the court must view the evidence in the light most favorable to the non-moving party and draw all inferences in its favor. Id. at 255.

## III.  DISCUSSION

Magistrate Judge Kevin F. McDonald recommended granting Kroger's motion for summary judgment. See ECF No. 57, R&R. Hemingway has alleged claims of race discrimination in violation of Title VII and Section 1981 and a claim of retaliation in violation of Title VII. See generally Compl.; R&R at 17. Hemingway objects and argues that the court should deny Kroger's motion for summary judgment as to both her discrimination claims under Title VII and Section 1981 and her retaliation claim under Title VII, for race discrimination. ECF No. 60 at 3, 23.

For her discrimination claims under Title VII and Section 1981, Hemingway specifically objects that (1) the R&R incorrectly concludes that she failed to make out a prima facie case of race discrimination, ECF No. 60 at 3, and that (2) the R&R erroneously concludes that she had not met her burden of establishing genuine issues of material fact on the issue of pretext. ECF No. 60 at 16.

For her retaliation claim under Title VII, Hemingway specifically objects that (1) the R&R incorrectly concludes that Hemingway failed to make out a prima facie case of retaliation because she had not shown she engaged in protected activity, Id. at 23, and that (2) the R&R incorrectly concludes that she had not met her burden of establishing

8

genuine issues of material fact on the issue of pretext. Id. at 26. The court will address each of Hemingway's objections in turn.

The court will begin by reviewing Hemingway's objections to the magistrate judge's recommendations on Hemingway's discrimination claims under Title VII and Section 1981. Then the court turns to review Hemingway's objections to the magistrate judge's recommendations on her retaliation claim under Title VII. Hemingway does not object to the R&R's recommendation to dismiss her disability claim under the ADA, and as such that claim will be reviewed for clear error.[1] See generally ECF No. 60. Finding none, the court affirms the magistrate judge's ruling to deny the disability claims under the ADA.

### A. Whether the R&R incorrectly concluded that Hemingway failed to make out a prima facie case of race discrimination

Hemingway objects to the magistrate judge's finding that she failed to make out a prima facie case of race discrimination, or in other words, that she failed to raise a genuine issue of material fact of the fourth element of her prima facie case "because she purportedly failed to identify similarly situated comparators." ECF No. 60 at 3; R&R at 27–28. The court agrees with the magistrate judge's findings.

Title VII prohibits employers from "discriminati[ng] against any individual with respect to [her] compensation, terms, conditions, or privileges of employment, because of such individual's race," 42 U.S.C. § 2000(e)-2 ("the anti-discrimination provision"), and

---

[1] Hemingway initially had a discrimination and retaliation claim under the ADA but has seemingly dropped her ADA claims. She does not address Kroger's argument regarding her ADA claims in response in opposition to the motion for summary judgment, ECF No. 48, and appears to have abandoned the claims. The magistrate judge addressed them out of an abundance of caution. See R&R at 33.

also prevents these employers from "discriminating against [their] employees because [the employees] ha[ve] opposed any practice made an unlawful employment practice by [Title VII]." 42 U.S.C. § 2000(e)-3(a) ("the anti-retaliation provision"). Section 1981 provides that "[a]ll persons . . . shall have the same right . . . to make and enforce contracts . . . as is enjoyed by white citizens." 42 U.S.C. § 1981(a). The Supreme Court of the United States has previously interpreted this statute "[t]o forbid all racial discrimination in the making of private as well as public contracts." Saint Francis Coll. v. Al-Khazraji, 481 U.S. 604, 609 (1987) (citing Runyon v. McCrary, 427 U.S. 160, 168, 174–75 (1976). Therefore, "a person who experiences intentional race discrimination in private employment may pursue a federal remedy under § 1981." Ali v. BC Architects Eng'rs, PLC, 832 F.App'x 167, 170–71 (4th Cir. 2020) (internal citations and quotations omitted).

Hemingway alleges that Kroger treated her more harshly than other employees and ultimately terminated her employment because of her race. ECF No. 1 at 6–8. In response, Kroger contends that it terminated Hemingway for her violation of Kroger's Associate Purchase Policy. See ECF No. 45-14.

In cases of alleged racial discrimination under Title VII and Section 1981, to survive summary judgment, the non-moving party must raise a genuine dispute of material fact as to whether she was treated disparately and terminated from employment because of her race "either with direct evidence or by developing 'an inferential case of discriminatory intent.'" Robinson v. Priority Automotive Huntersville, Inc., 70 F.4th 776, 783 (4th Cir. 2023) (citing Lyons v. City of Alexandria, 35 F.4th 285, 289 (4th Cir.

2022)).  As such, the court next looks to whether Hemingway raises a genuine issue of material fact.

> **1. Whether the R&R incorrectly shifts the burden of proof to Hemingway without concluding that Kroger had not met its original burden of proof**

Without direct evidence of intentional discrimination, a plaintiff may use the burden-shifting framework of McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973), to develop an inferential case of discriminatory intent." Lyons, 35 F.4th at 289 (parallel citations omitted) (citing Spencer v. Va. State Univ., 919 F.3d 199, 207 (4th Cir. 2019)). There are three steps under the McDonnell Douglas framework: first, the plaintiff must establish a prima facie case of racial discrimination.  See McDonnell Douglas, 411 U.S. at 802.  Then the burden shifts to the employer to articulate a legitimate, nondiscriminatory reason for the adverse employment decision.  Id.  Finally, the burden shifts back to the plaintiff to show that the employer's proffered legitimate, nondiscriminatory reason is a pretext.  Id. at 804.  "Although intermediate evidentiary burdens shift back and forth under this framework, the ultimate burden of persuading the trier of fact that [the defendant] intentionally discriminated against the plaintiff remains at all times with the plaintiff."  Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 143 (2000) (cleaned up); Lyons, 35 F.4th at 289 (parallel citations omitted); see also Guessous v. Fairview Prop. Invs., LLC, 828 F.3d 208, 216 (4th Cir. 2016) (explaining that Title VII and § 1981 discriminatory discharge claims are analyzed under the same framework).

### 2. Whether Hemingway established a <u>prima facie</u> case of racial discrimination

For Hemingway's objection that Kroger did not meet its burden of proof to have merit, Hemingway must have actually established a <u>prima facie</u> case of racial discrimination for the burden to shift to the employer to articulate a legitimate, nondiscriminatory reason for the adverse employment decision.  See <u>McDonell Douglas</u>, 411 U.S. at 802.

"To establish a prima facie case of disparate treatment, a plaintiff must prove four elements: '(1) membership in a protected class; (2) satisfactory job performance; (3) adverse employment action; and (4) different treatment from similarly situated employees outside the protected class.'"  <u>Cosby v. S.C. Probation, Parole & Pardon Servs.</u>, 93 F.4th 707, 714 (4th Cir. 2024) (quoting <u>Coleman v. Md. Ct. of Appeals</u>, 626 F.3d 187, 190 (4th Cir. 2010)).

In this case, only the fourth element of the <u>prima facie</u> case is at issue.  ECF No. 45-1 at 14–15.  The R&R recommended that Hemingway failed to identify similarly situated comparators and therefore determined that Hemingway did not establish a <u>prima facie</u> case of race discrimination on this basis.  R&R at 22.  Hemingway objected to this finding, claiming that the R&R incorrectly excluded every piece of Hemingway's comparator evidence.  ECF No. 60 at 5.  As such, the court looks further into the treatment of Hemingway's comparator evidence.

### 3. Whether the R&R incorrectly excludes every piece of Hemingway's comparator evidence

Hemingway argues the R&R erroneously excludes certain comparator evidence as hearsay.  ECF No. 60 at 6.  She argues that the comparator evidence is non-hearsay for

two different reasons. <u>Id.</u> First, she argues that it is not hearsay because the evidence is not offered for the truth of the matter stated and that the evidence constitutes statements of an employee of a party opponent. <u>Id.</u> at 7. Second, she argues that the R&R erroneously (and <u>sua</u> <u>sponte</u>) excludes certain comparator evidence on the grounds that only employees with the same supervisor can be comparators without any legal support for so concluding. <u>Id.</u> at 8. Hemingway argues that this disregards the remaining comparator evidence by taking too narrow of a view of the evidence and incorrectly characterizing it as "conclusory and vague." <u>Id.</u> at 10.

Kroger replies that it did not waive any arguments opposing Hemingway's comparators. ECF No. 68 at 8. Kroger argues Hemingway's statements regarding alleged comparators Jackie White ("White") and Sean Pearson ("Pearson") are inadmissible hearsay as a matter of law; and even if Hemingway's statements were admissible, these employees are not similarly situated comparators because they were not store managers and had different supervisors. <u>Id.</u>

To successfully establish 'similarly situated employees' or 'valid comparators,' Hemingway "must produce evidence that herself and a comparator 'dealt with the same supervisor, [were] subject to the same standards, and . . . engaged in the same conduct without differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it.'" <u>Haynes v. Waste Connections</u>, 922 F.3d 219, 224–25 (4th Cir. 2019) (quoting <u>Mitchell v. Toledo Hosp.</u>, 965 F.2d 577, 583 (6th Cir. 1992)).

The court finds Hemingway has based her race discrimination allegations upon comparisons to other employees in a non-protected class, and "therefore the validity of

[her] prima facie case depends upon whether th[ose] comparator[s] [are] indeed similarly situated." Haywood v. Locke, 387 F. App'x 355, 359 (4th Cir. 2010); see also McDonnell, 411 U.S. at 792. ("[I]t is the plaintiff's task to demonstrate that similarly situated employees were not treated equally."). It is Hemingway's burden to show that her comparators are "similar in all relevant respects to their comparator." Haywood, 387 F. App'x at 359. ECF No. 68 at 9.

The court notes that, in her testimony during Kroger's investigation, Hemingway stated that David Rosati, ("Rosati") Mitch Wideman, ("Wideman") and RuAnn Tracy ("Tracy") engaged in the same behavior. ECF No. 45-11 at 20–21. However, Hemingway has failed to provide evidence either as to whether Rosati reported to the same supervisors or to provide "details as to how and when he violated the Associate Purchase Policy." R&R at 19. For Wideman[2] and Tracy, Hemingway also provides no details about these employees' alleged violations of the Associate Purchase Policy. See generally ECF No. 45-5, Hemingway Dep. Hemingway has put forth no evidence to indicate that Tracy engaged in the same behavior as Hemingway—consuming a product prior to payment. See ECF No. 49 at 6–7.

Hemingway further alleges White, Pearson, and the "Payton driver" were comparators, but bases these allegations not on first-hand knowledge, but instead on information from a co-worker. ECF No. 48-1 at 30. The court agrees with the magistrate judge that Hemingway's allegations about these individuals are inadmissible hearsay; as "Federal Rule of Civil Procedure 56(e) specifically requires that affidavits submitted on

_____

[2] Moreover, Wideman's race is listed as "Black." See ECF No. 48-2 at 5. Therefore, he is not a proper comparator because he is not "outside the protected class." See Cosby, 93 F.4th 707 at 714.

summary judgment contain admissible evidence and be based on personal knowledge." Evans v. Tech. Applications & Serv. Co., 80 F.3d 954, 962 (4th Cir. 1996). This court has found the law is clear, "inadmissible hearsay cannot create a genuine issue of material fact." Thompson v. Queen City, Inc., 2002 WL 32345733, at *6 (D.S.C. July 9, 2002), aff'd, 70 F. App'x 730 (4th Cir. 2003) (collecting cases). Further, this circuit has held that "hearsay evidence, which is inadmissible at trial, cannot be considered on a motion for summary judgment." Maryland Highways Contractors Ass'n, Inc. v. State of Md., 933 F.2d 1246, 1251 (4th Cir. 1991).

Hemingway also identified Todd Sheehan ("Sheehan") and Jeff Rauls ("Rauls") as comparators. R&R at 21. For Sheehan, the court finds Hemingway has failed to provide evidence that Sheehan had the same role of store manager or that he had the same supervisors as Hemingway. Id.; see generally ECF No. 48. For Rauls, the court finds Hemingway has not provided sufficient evidence to demonstrate that Rauls dealt with the same supervisors. Id. Based upon the foregoing, the magistrate judge's report and recommendation correctly concluded that Hemingway failed to identify similarly situated comparators and correctly concluded that Hemingway did not establish a prima facie case of race discrimination on this basis.

### 4. Whether Hemingway was discharged under circumstances that raise a reasonable inference of unlawful discrimination

The R&R recognized that Hemingway may also satisfy the fourth element by demonstrating that she was discharged "under circumstances that raise a reasonable inference of unlawful discrimination." Bing v. Brivo Sys., LLC, 959 F.3d 605, 617 n.8 (4th Cir. 2020) (citation omitted); see Bryant v. Aiken Reg'l Med. Ctrs., Inc., 333 F.3d 536, 545 (4th Cir. 2003) (noting that a plaintiff is not required as a matter of law to

identify a similarly situated comparator to satisfy the fourth prong of a <u>prima</u> <u>facie</u> case
and to succeed on a race discrimination claim).

Hemingway attempts to show that she "was given the autonomy to make
decisions based on the needs of the associates in the store," and that she changed the
Associate Purchase Policy based on this authority.  ECF No. 49-1.  Through such an
admission and line of reasoning, Hemingway has still failed to advance any evidence to
show that her termination was based on race discrimination.  "Title VII is not a vehicle
for substituting the judgment of a court for that of the employer."  <u>EEOC v. Clay Printing</u>
<u>Co.</u>, 955 F.2d 936, 946 (4th Cir. 1992).  Hemingway also attempts to raise an inference of
unlawful discrimination through her testimony that Busch and King "treated her
aggressively and in a bullying manner but did not treat white managers in the same
manner."  ECF No. 48 at 13.

The court notes that Hemingway does not provide additional specific facts as to
King's behavior, and absent such specifics, her allegations are vague and conclusory.
<u>See</u> R&R at 23.  Hemingway similarly fails to provide any specific facts beyond
conclusory allegations regarding Busch's behavior, and such "vague claims of differing
treatment by the plaintiff are insufficient to demonstrate disparate treatment."  <u>Alexander</u>
<u>v. Bloomingdale's, Inc.</u>, 2019 WL 2162286, at *7 (D. Md. May 17, 2019), (citation
omitted), <u>aff'd</u>, 780 F.App'x 48 (4th Cir. 2019).

Additionally, Hemingway attempts to establish evidence of discriminatory animus
exhibited by King through testimony that her vacation date request was denied while
other, like "Jimmy Collins" and "Brent" had their vacation requests approved.  ECF Nos.
48 at 4–5; 48-1 at 60–62.  Such evidence of discriminatory animus is irrelevant because

King was not part of the process to terminate Hemingway's employment.  See ECF No. 49 at 10.  Hemingway must show that a protected trait must have actually played a role in the employer's decision-making process and had a determinative influence on the outcome.  See Hill v. Lockheed Martin Logistics Mgmt., Inc., 354 F.3d 277, 286 (4th Cir. 2004) (en banc), overruled in part on other grounds by Gross v. FBL Fin. Servs., Inc., 557 U.S. 167 (2009).

The court finds that Hemingway put forward no direct evidence of discrimination. Based on the foregoing reasons, the court agrees with the magistrate judge, and finds the evidence was hearsay and the comparator evidence was properly excluded.  As such, Hemingway's objections are overruled.

### 5. Whether Kroger did not challenge all allegations in Hemingway's complaint and offered the wrong evidence for Hemingway's disparate treatment claim

As part of Hemingway's objection to the magistrate judge's finding that she had not established a prima facie case, Hemingway argues that the R&R incorrectly shifts the burden of proof to Hemingway.  ECF No. 60 at 3.  She alleges that Kroger did not meet its burden by failing to challenge all allegations of her complaint.  Id. at 3.

Specifically, Hemingway argues that Kroger failed to address her allegation that "defendant's discriminatory actions included . . . discharging [Hemingway] based on her race."  Compl. ¶ 55; ECF No. 60 at 4.  Hemingway claims that she has successfully made both a disparate treatment claim, and a disparate impact claim.  ECF No. 60 at 4.  As part of her objection to the magistrate judge's finding that she failed to make out a prima facie case of race discrimination, Hemingway further alleges that the magistrate judge

"repeatedly collapses" the disparate impact and disparate treatment analyses.  ECF No. 60 at 11–12; see also ECF No. 68 at 5.

In its reply, Kroger responds that Hemingway has waived this argument because she did not raise it in the initial round of summary judgment briefing.  ECF No. 68 at 4.

The court finds the conclusory allegations of disparate impact contained in Hemingway's complaint "are insufficient to preclude granting the summary judgment motion."  Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986).  To make a disparate impact claim, Hemingway must have pled and presented evidence that a "facially neutral employment practice had a significantly discriminatory impact."  Anderson v. Westinghouse Savannah River Co., 406 F.3d 248, 265 (4th Cir. 2005).

The only relevant employment practices to such a claim of 'disparate impact' are Kroger's Vacation Policy and Associate Purchase Policy.  See generally Compl. Hemingway had the opportunity to raise and present evidence of a disparate impact claim at the summary judgment stage, but did not, and instead raises the 'disparate impact' claim for the first time in her objections to the magistrate judge's R&R.  ECF No. 60 at 3–4.

The court is not obligated to consider new arguments raised by a party for the first time in objections to the magistrate judge's R&R.  See e.g., Doe v. Chao, 306 F.3d 170, 183 (4th Cir. 2002); Dune v. G4s Regulated Sec. Solutions, Inc., 2015 WL 799523 (D.S.C. Feb 25, 2015) (Anderson Jr., J.) ("[t]he Magistrates Act was not intended to give litigants an opportunity to run one version of their case past the magistrate [judge], then another past the district court.") (internal citations and quotations omitted).  This court has previously articulated that "a magistrate [judge's] decision should not be disturbed on

the basis of arguments not presented to him." <u>ContraVest Inc. v. Mt. Hawley Ins. Co.</u>,

273 F. Supp. 3d 607, 620 (D.S.C. 2017) (quoting <u>Keitt v. Ormond</u>, 2008 WL 4964770, at

*1 (S.D.W. Va. Nov. 13, 2008)). "Allowing parties to raise new issues or arguments at

any point in the life of a case would . . . result in a needless complication of litigation."

<u>Id.</u> (internal citations omitted). Rather, "[p]arties should fully plead their claims, and

fully advance their arguments, at all stages of litigation, unless they are prepared to waive

them." <u>Id.</u> (internal citations omitted).

     The court finds Hemingway failed to raise the above issues of a disparate impact

argument in her response to Kroger's motion for summary judgment, and as such,

Hemingway's objection is overruled.

###     6.   Whether the R&R ignores evidence that would support application of the cat's paw doctrine and erroneously disregards Hemingway's testimony regarding discriminatory and disparate treatment

     Hemingway objects on the basis that King's differing treatment of her vacation

request and Collins' vacation request is evidence of discriminatory animus on the part of

Kroger. R&R at 24. Kroger's main defense to this claim is that King was not involved in

the decision to terminate Hemingway's employment. ECF No. 49 at 10. Hemingway

objects that the R&R misstates the legal requirements for a discriminatory treatment

claim. ECF No. 60 at 14. She argues that the R&R incorrectly concludes there is "no

evidence" King was a decision maker on the basis that Kroger's discovery responses are

evidence that create a genuine issue of material fact on its face. <u>Id.</u> at 13. Hemingway

also argues the R&R ignores evidence supporting application of the cat's paw doctrine

and argues that the R&R erroneously disregards Hemingway's testimony regarding

discriminatory and disparate treatment by King and thus gives rise to a reasonable inference of discrimination. Id. at 14–15.

Under the "cat's paw" doctrine, Hemingway can "hold an employer liable for the animus of a supervisor who was not charged with making the ultimate employment decision." Staub v. Proctor Hosp., 562 U.S. 411, 415 (2011) (citation omitted). To succeed under the cat's paw doctrine, Hemingway must show: (1) her supervisor harbored an unlawful animus; (2) her supervisor performed an act intended to cause an adverse employment action; and (3) the ultimate decisionmaker merely rubber-stamped her supervisor's recommendation. See Hayes v. Wall Recycling, LLC, 2024 WL 1545185, at *4 (E.D.N.C. Apr. 9, 2024); Ashanti v. City of Richmond Sch. Bd., 2023 WL 1110300, at *9 (E.D. Va. Jan. 30, 2023).

Kroger argues the cat's paw argument fails because there is absolutely no evidence in the record to establish the second and third elements. See ECF No. 68 at 12. It argues that the record shows that King was not involved in the investigation into Hemingway's violation of the Associate Purchase Policy. Id. The ethics complaint was initiated by an anonymous employee in Hemingway's store and handled by an independent investigator. Id. Kroger points out that, following a thorough investigation, Human Resources ("HR") made the recommendation to terminate Hemingway. Id. The court finds that King was later looped in as Hemingway's direct supervisor only after HR concluded that Hemingway violated the Associate Purchase Policy and that disciplinary action was necessary. Id. King testified in her deposition that HR did not involve King in its investigations because if "the investigation doesn't turn out anything or it doesn't warrant, I don't want to know if somebody's being investigated unless it really comes out

that there is a true investigation going on." ECF No. 49-2 at 10. King explained that she "[didn't] want to have any judgment on a person, and I think it's fair that until something comes out . . . I am kept out of the loop." Id. at 11. The court finds that the testimony certainly does not show that King "performed an act intended to cause an adverse employment action." Id. at 12.

For the foregoing reasons, the court finds the cat's paw doctrine does not apply, and the court disregards Hemingway's objection on these grounds.

### B. Whether the R&R erroneously concludes that Hemingway has not met her burden of establishing genuine issues of material fact on the issue of pretext

Hemingway objects that courts in this circuit have held that violations of a company policy constitute legitimate and nondiscriminatory reasons for the termination of employment. See Holiday v. New Hanover Cnty. Registrar of Deeds, 317 F. App'x 344, 345 (4th Cir. 2009); Cupples v. AmSan, LLC, 282 F. App'x 205, 209 (4th Cir. 2008).

Hemingway must present evidence of pretext "by showing that the employer's proffered explanation is unworthy of credence." Holland v. Washington Homes, Inc., 487 F.3d 208, 214 (4th Cir. 2007). Further, "[o]nce an employer has provided a non-discriminatory explanation for its decision, the plaintiff cannot seek to expose that rationale as pretextual by focusing on minor discrepancies that do not cast doubt on the explanation's validity, or by raising points that are wholly irrelevant to it. The former would not create a 'genuine' dispute, the latter would fail to be 'material.'" Hux v. City of Newport News, 451 F.3d 311, 315 (4th Cir. 2006).

Hemingway objects that the magistrate judge "incorrectly rel[ied] on Balderson v. Lincare Inc.," a 2023 Fourth Circuit opinion.  ECF No. 60 at 18.  She argues that "there is ample evidence that Kroger's proffered reason for the termination [violation of the Associate Purchase Policy] is not credible because both the reason and the purported decision maker have shifted over time."  ECF No. 48 at 5.  Hemingway claims the magistrate judge took Balderson out of context because Balderson was decided after a bench trial, not on summary judgment.  ECF No. 60 at 16.  Hemingway argues that the R&R incorrectly applies the abrogated "pretext plus" standard and overstates her burden. Id.  Kroger responded that it terminated Hemingway for violating the Associate Purchase Policy, which is a legitimate non-discriminatory reason for termination.  ECF No. 68 at 13.  Kroger has also provided examples of fourteen employees who were terminated or given the opportunity to resign for violating the same policy as evidence of its zero-tolerance policy for violations of the Associate Purchase Policy.  See ECF No. 45-1 at 5. A plaintiff can establish pretext by demonstrating that "an employer's proffered nondiscriminatory reasons for the termination are inconsistent over time."  Haynes, 922 F.3d at 225.  Here, Kroger's reason for terminating Hemingway's employment has remained consistent.  See generally ECF Nos. 45-14, 45-11; see ECF No. 45-15 at 2 ("[t]his is a violation of the Associate Purchase Policy and [Hemingway] is being terminated from the company.").

Furthermore, regarding Hemingway's Section 1981 discrimination claim, Hemingway must prove "that race was a but-for cause of h[er] firing."  Jones v. Lowe's Companies, Inc., 845 F. App'x 205, 215 (4th Cir. 2021) (emphasis added).  This court finds that it is undisputed that Hemingway engaged in behavior the Associate Purchase

Policy clearly prohibits, and Kroger believed the Associate Purchase Policy applied to Hemingway. The court finds there is no compelling evidence in the record that Kroger's application of the policy to Hemingway was a pretext for discrimination. The court further finds that Hemingway has failed to establish sufficiently similar comparators or otherwise provide evidence outside of the conclusory allegations in her complaint that could lead a reasonable jury to determine that she was terminated from employment based on her race. The court agrees with the magistrate judge and finds that Hemingway has failed to establish a prima facie case of race discrimination under Title VII or Section 1981.

### C.  Retaliation in Violation of Title VII

The court now turns to Hemingway's objections to the magistrate judge's recommendations for her retaliation claim under Title VII.

To establish a prima facie case of retaliation under Title VII, Hemingway "must demonstrate: '(1) she engaged in a protected activity; (2) the employer acted adversely against her; and (3) there was a causal connection between the protected activity and the asserted adverse action.'" Walton v. Harker, 33 F.4th 165, 177 (4th Cir. 2022) (quoting Hoyle v. Freightliner, LLC, 650 F.3d 321, 337 (4th Cir. 2011)). "Protected activity" under Title VII falls into one of two categories: opposition or participation. Crawford v. Metro. Gov't of Nashville & Davidson Cnty., 555 U.S. 271, 274 (2009) (citing 42 U.S.C. § 2000e-3(a)). "Employees engage in protected oppositional activity when, inter alia, they 'complain to their superiors about suspected violations of Title VII.'" Boyer-Liberto v. Fontainebleau Corp., 786 F.3d 264, 281 (4th Cir. 2015) (quoting Bryant v. Aiken Reg'l Med. Ctrs. Inc., 333 F.3d 536, 543–44 (4th Cir. 2003)).

23

1. **Whether the R&R incorrectly concludes that Hemingway failed to make out a <u>prima</u> <u>facie</u> case of retaliation because she has not shown she engaged in protected activity**

Specifically, Hemingway alleges that she has provided "evidence of several discrete situations in which Hemingway engaged in protected activity" and therefore has made out a <u>prima</u> <u>facie</u> case of retaliation on the first element of the analysis.  ECF No. 60 at 23.  Hemingway argues that she engaged in protected activity when she complained to King that she "just felt there [was] some bias."  ECF No. 60 at 24.

Kroger argues that a single statement complaining of "bias" does not constitute protected activity.  <u>See</u> <u>Kennedy v. Abbott Laboratories, Inc.</u>, 654 F. Supp.3d 512, 524 (E.D.N.C. 2023) ("Where an employee's internal complaint merely concerns conduct not prohibited by Title VII, the internal complaint is not protected activity.").  "Protected activity does not include generalized employment-related complaints unrelated to Title VII-prohibited discrimination."  <u>Sung Kun Kim v. Panetta</u>, 2012 WL 3600288, at *17 (E.D. Va. Aug. 21, 2012), <u>aff'd</u>, 516 F. App'x 268 (4th Cir. 2013); <u>see</u> <u>also</u> <u>White v. Rice</u>, 1995 WL 20796, at *4 (4th Cir. Jan. 20, 1995) (holding that "generalized verbal complaints to co-workers and supervisors" are not protected activity under Title VII); <u>Sara Kaye Ruffner v. MD OMG EMP LLC</u>, 2012 WL 3542019, at *3 (D. Md. Aug. 13, 2012) ("The employee must, at least implicitly or indirectly, complain about or oppose prohibited discrimination.").  As such, the court finds Hemingway's vague allegations that she complained of "bias," <u>see</u> ECF No. 60 at 24, do not amount to protected activity under Title VII.

24

    **2.  Whether the R&R incorrectly concludes Hemingway has not met her burden of establishing genuine issues of material fact on the issue of pretext**

Hemingway objects that the R&R incorporates its previous findings on pretext. Id. She argues that the R&R completely fails to analyze temporal proximity as evidence of causation or pretext. Id. at 27. Hemingway argues that the magistrate judge did not analyze "temporal proximity as evidence of causation or pretext" as an element of her retaliation claim. Id.

Kroger argues that the magistrate judge did not engage in this analysis because he found that Hemingway did not engage in protected activity. ECF No. 68 at 16.

The court finds that it is clear from the record that Hemingway "complained to King herself that the denial of her vacation and the demand for proof of reservations was discriminatory." ECF No. 48 at 20–21; see ECF No. 48-1 at 90. Yet at no point in her testimony did Hemingway testify that she complained of being treated differently specifically because of her race. See generally ECF No. 48-1. Hemingway also complained to Busch, but there is no evidence in the cited deposition testimony that Hemingway complained that she was being treated differently or adversely because of her race. ECF No. 48 at 21 (citing ECF No. 48-9). Hemingway complained to her coworker Tim Edwards ("Edwards"). ECF No. 48 at 20. "'Merely complaining in general terms of discrimination or harassment, without indicating a connection to a protected class or providing facts sufficient to create that inference, is insufficient' to constitute protected activity under Title VII." Cosby, 93 F.4th at 719 (quoting Skiba v. Ill. Cent. R.R. Co., 884 F.3d 708, 718 (7th Cir. 2018)).

This court agrees with the magistrate judge's finding that "there is no indication that any complaint [Hemingway] made to Edwards was passed on to the defendant." R&R at 31.  Moreover, the final decision maker that terminated Hemingway's employment, Kunselman, had no knowledge of Hemingway's complaints.  See generally Kunselman Decl.  Nothing in the record suggests that Hemingway's termination had anything to do with any complaints she made to King.

The magistrate judge recommended that this court grant summary judgment for Kroger on Hemingway's race discrimination and retaliation claims in violation of Title VII.  The court agrees. In conclusion, the court finds Hemingway violated the Associate Purchase Policy, and that termination is the proper punishment for violating the policy. Comparators of all races were also terminated for the same violation of the Associate Purchase Policy, and there is no evidence of retaliation.  ECF No. 45-1 at 5–6; Busch Dep. 27:4–8; ECF No. 45-12 at 3–5.

## IV.   CONCLUSION

For the foregoing reasons the court **ADOPTS** the R&R in full and **GRANTS** Kroger's motion for summary judgment.

**AND IT IS SO ORDERED.**

**DAVID C. NORTON**
**UNITED STATES DISTRICT JUDGE**

**August 27, 2025**
**Charleston, South Carolina**

26